CASE 33————————SEPTEMBER 27.

## Kellar vs. Bate.

### APPEAL FROM JEFFERSON COUNTY COURT.

· If medical aid be rendered a slave in a case of necessity, which does not admit of a previous application to the master, and to which he cannot be presumed to have assented because ignorant of the facts, the person rendering the service would be entitled to compensation from the master upon the implied promise to pay, resulting from his duty to make suitable provision for his slave. Except, however, in the class of cases, *supra*, the master would not be liable for medical services rendered his slave without his assent.

The assent necessary to charge the master with the value of medical services rendered his slave, may be presumed from his acquiescence in the medical treatment of his slave, continued for a length of time without objection by him, or from any other facts indicating, on his part, a willingness or desire that the service shall be rendered.

See the opinion for a state of fact from which a master was held liable for the value of medical services rendered his slaves, without a direct employment of the physician by him, upon his implied promise.

On the trial of an appeal from the judgment of a justice of the peace, if the decision is more favorable to the appellant than the judgment appealed from, he is entitled to his costs.

STIRMAN, for appellant.

W. T. HAGGIN, for appellee, cited 10 *Johnson's Rep.*, 249 ; 2 *Bailey*, 562; *Wheeler's Law of Slavery*, 225.

CHIEF JUSTICE STITES DELIVERED THE OPINION OF THE COURT:

Kellar sued Bate before a justice of Jefferson county, for a bill for medical services rendered the slaves of Bate, and obtained a judgment for $90—the amount claimed. Bate appealed to the county court, and, the law and facts having been submitted to the county judge, he rendered a judgment for Kellar for $6, and costs. From that judgment Kellar has appealed, and complains that the court erred in refusing to adjudge to him the amount of his account, and in overruling his motion for a new trial; and Bate, by a cross-appeal, complains of the judgment for costs.

The county judge, as appears from his opinion, refused judgment for the full amount of the bill sued for, because of the

Kellar vs. Bate.

supposed failure of Kellar to show that Bate had employed him as a physician for his slaves, or had recognized him in that capacity whilst attending them, or ever assented to the rendition of the services as charged ; but gave judgment for $6, upon the ground that services to that extent were indispensably necessary to the safety of the slaves, whose condition, when such service was rendered, did not admit of any delay for the purpose of obtaining the ma ter's assent.

If medical aid be rendered a slave in a case of necessity, which does not admit of a previous application to the master, and to which he cannot be presumed to have assented because ignorant of the facts, we have no doubt but that the person rendering the service would be entitled to compensation from the master. In such case the law would raise an implied promise to pay, on the ground that the master was legally bound to make suitable provision for his slave.

Except, however, in the class of cases mentioned, requiring instant and indispensable assistance, and not admitting of delay to obtain the assent of the master, the latter would not be liable for medical services rendered his slave without his assent. As said in the case of *Dunbar vs. Williams*, 10 *Johnson's Reports*, "it would be dangerous to the rights of the owners of slaves to permit them to charge their masters with medical assistance, when the case was not so urgent as to prevent a previous application to the master for his direction."

The assent necessary to charge the master with the value of the service rendered to his slave may, like any other fact, be established by direct testimony; or it may be presumed, from his acquiescence in the medical treatment of his slave, continued for a length of time, without objection by him ; or from any other facts indicating, on his part, a willingness or desire that the service should be rendered.

We concur in opinion with the county judge that the case before us is not one which authorized a judgment for the full amount of the demand, without evidence of assent upon the part of the owner of the slaves that appellant should render the services for which he has charged ; but we think that there was sufficient evidence to warrant the conclusion that the own-

er had assented to the rendition of the services, and for that reason are of opinion that a new trial should have been awarded to appellant.

The value and extent of service is placed beyond any doubt by the evidence of Dr. Marshall, who also proved that he, with appellant, had attended the slaves for twenty-two days, and left them in the exclusive charge of appellant, who continued to wait upon them, or two of them, until they finally recovered. Marshall also proved that the slaves, to whom the services were rendered, were children, living with their mother in the city of Louisville, and that they all belonged to appellee, and were under his dominion; that appellee was in town several times a week during the time, and only lived six miles from Louisville, and also that he promised Marshall to pay his bill for services, although he, Marshall, was only called in by the mother of the slaves as a consulting physician with appellant. Appellant attended upon the slaves for thirty days, including the period that Marshall attended with him. It also appeared that one of the slaves died whilst both physicians were in attendance.

Now, in view of these facts, it is difficult, we think, to resist the conclusion that appellee was apprised of the condition of his slaves—their need of medical attention—and the fact that they were receiving such attention both from appellant and Marshall. It would be singular indeed that an owner of slaves, not hired out, and living so near to them, and so frequently in the same town, should not be apprised of their being sick for so long a time, and of their needing and receiving medical aid, especially when one of them died during the period. That these facts were all known to him is not only evident from the nature of the relations subsisting between master and slave, but rendered still more apparent by the readiness with which he agreed to pay Marshall's bill. His charges must have been as well for consultation as attendance, and can it be believed that appellee would have acknowledged his liability for such charges without having been well apprised when and with whom the consultations were had?

It seems to us that the facts stated demonstrate, very clearly, not only that Bate had notice of the condition of his slaves, and the fact that Kellar was rendering them medical service, but also warrant the conclusion that he assented to such service by acquiescing therein, and permitting it to continue so long without objection. And, for that reason, we think the county judge ought to have granted a new trial, and erred in refusing it.

The judgment for costs upon the appeal to the county court, complained of by appellee on cross-appeal, was manifestly improper. The *Rev. Statutes*, (*1st vol., Stanton's ed.*, 290,) expressly provide that on the trial of such appeals, if the decision is more favorable to the appellant than the judgment appealed from, he is entitled to his costs. This can be corrected on the return of the cause.

For the errors indicated, the judgment is *reversed* upon the original and cross-appeals, and cause remanded for a new trial, and further proceedings not inconsistent with this opinion.

Kellar should have his costs in this court—he having succeeded on the main point in dispute.